**UNITED STATES COURT OF INTERNATIONAL TRADE**

---

DETROIT THERMAL SYSTEMS, LLC

        Plaintiff,

    v.                                 Court No. 26-02942

The UNITED STATES OF AMERICA; the
EXECUTIVE OFFICE OF THE PRESIDENT;
UNITED STATES CUSTOMS AND BORDER
PROTECTION; RODNEY S. SCOTT, in his official
capacity as Commissioner of United States Customs
and Border Protection; the OFFICE OF THE
UNITED STATES TRADE REPRESENTATIVE;
JAMIESON GREER, in his official capacity as
United States Trade Representative; the UNITED
STATES INTERNATIONAL TRADE
COMMISSION

        Defendants.

---

**COMPLAINT**

Plaintiff, Detroit Thermal Systems, LLC ("Plaintiff" or "Detroit Thermal") by and through its undersigned attorneys, alleges and states a cause of action as follows:

**CAUSE OF ACTION**

1.      Detroit Thermal is an importer of record for foreign-origin merchandise imported into the United States.

2.      Through a series of executive orders issued since February 2, 2025, the President of the United States invoked the International Emergency Economic Powers Act ("IEEPA"), Pub. L. No. 95-223, Section 202, 91 Stat. 1626 (1977), as authority to impose new and substantial tariffs ("IEEPA tariffs") on merchandise imported into the United States from every

foreign country, including countries from which Plaintiff sources its merchandise. As importer of record, Plaintiff is responsible for paying the IEEPA tariffs through the entry process.

3.     This Court, the United States Court of Appeals for the Federal Circuit, and the United States Supreme Court have held that IEEPA does not authorize these tariffs.

4.     Plaintiff seeks (i) a declaration that the IEEPA tariffs are unlawful as applied to Plaintiff's entries; (ii) an injunction preventing the liquidation of Plaintiff's entries with IEEPA tariffs assessed; and (iii) an order requiring the full refund of all IEEPA tariffs Plaintiff has paid to the United States as of the date of such order, with interest, as appropriate, through reliquidation as necessary, or a money judgment equal to the same amount.

## **PARTIES**

5.     Plaintiff, Detroit Thermal, is a U.S. company, with its corporate headquarters at 6505 Cogswell Street, Suite 100, Romulus, Michigan, 48174.

6.     Defendant United States of America imposed and received the IEEPA tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

7.     Defendant Executive Office of the President consists of the offices and agencies that support the work of the President and the Executive Branch of the United States. The Executive Office of the President issued executive orders imposing the IEEPA tariffs.

8.     Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on merchandise imported into the United States, including the IEEPA tariffs.

9.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10.     The Office of the United States Trade Representative ("USTR") is an agency of the United States headquartered in Washington, D.C. USTR is responsible for developing and promoting United States foreign trade policies, including trade negotiations with foreign nations that have resulted in one or more changes to the *ad valorum* rates of the IEEPA tariffs.

11.     Defendant Jamieson Greer is the United States Trade Representative of USTR and is sued in his official capacity.

12.     Defendant United States International Trade Commission ("ITC") is an agency of the United States headquartered in Washington, D.C. The ITC is responsible for the maintenance and upkeep of the Harmonized Tariff Schedule of the United States ("HTSUS"), including publishing revisions to Chapter 99, HTSUS, used by CBP to effectuate collection of the IEEPA tariffs.

13.     Defendants are referred to collectively in this complaint as "Defendants."

### JURISDICTION AND STANDING

14.     The Court has subject matter jurisdiction under 28 U.S.C. § 1581 as this action is commenced against the United States, and agencies and officers thereof, and arises out of a law providing for tariffs and duties, embargoes and other quantitative restrictions, and the administrative and enforcement thereof. 28 U.S.C. § 1581(i). IEEPA specifically provides for embargoes and other quantitative restrictions and has been invoked by executive orders published by the Executive Office of the President to impose tariffs.

15.     This Court possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585.

16.     This Court may enter a money judgment for or against the United States in any civil action commenced under 28 U.S.C. § 1581 or 28 U.S.C. § 1582 and may also order any

other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

17.    By virtue of importing merchandise into the United States and paying IEEPA tariffs assessed, as well as, for some of its entries, the final assessment of the IEEPA tariffs through liquidation, Plaintiff has been adversely affected or aggrieved by the imposition of IEEPA tariffs by Defendants and has standing to pursue this suit under 28 U.S.C. § 2631(i).

**STATEMENT OF FACTS**

18.    The Executive Office of the President has published multiple executive orders imposing IEEPA tariffs on a number of countries, citing IEEPA as granting the President the authority to do so. The executive orders that imposed tariffs applicable to Plaintiff's merchandise are as follows:

19.    On February 1, 2025, the Executive Office of the President published Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, imposing tariffs on goods of China. The Executive Order stated that such tariffs were required to combat "the sustained influx of synthetic opioids" from China. Executive Orders 14200, 14228, 14256, and 14357 subsequently modified Executive Order 14195.

20.    On February 1, 2025, the Executive Office of the President published Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border*, imposing tariffs on goods of Mexico. The Executive Order cited "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking

organizations], other drug and human traffickers, criminals at large, and illicit drugs" as the reasons necessitating the imposition of tariffs. Executive Orders 14198, 14227, and 14232 subsequently modified Executive Order 14194.

21.     On February 1, 2025, the Executive Office of the President published Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, imposing tariffs on goods of Canada. The Executive Order cites "[g]ang members, smugglers, human traffickers, and illicit drugs" as well as Canada's failure "to devote sufficient attention and resources" to preventing illegal drugs from entering the United States as the basis for imposing tariffs. Executive Orders 14197, 14226, 14231, and 14325 subsequently modified Executive Order 14193.

22.     On April 2, 2025, citing trade deficits with U.S. trading partners as a separate national emergency, the Executive Office of the President published Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*. The Executive Order asserts that "U.S. trading partners' economic policies…suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." A baseline tariff was imposed on all countries, while additional country-specific rates were also announced and later came into effect. Executive Order 14257 was subsequently modified by Executive Orders 14259, 14266, 14298, 14316, 14324, 14326, 14334, 14346, 14358, and 14360.

23.     On July 30, 2025, the Executive Office of the President published Executive Order 14323, 90 Fed. Reg. 37739, *Addressing Threats to the United States by the Government of Brazil*, imposing additional tariffs on products of Brazil. The Executive Order cites actions taken by the Brazilian judiciary that it claims "censor United States persons for speech protected by the

First Amendment" and "endanger the economy of the United States by tyrannically and arbitrarily coercing United States companies to censor political speech" as a national emergency requiring the imposition of tariffs. Executive Order 14323 was subsequently modified by Executive Order 14361. The tariffs imposed by these orders remain in effect.

24.    Plaintiff's merchandise was subject to the Executive Orders above (collectively, the "Challenged Tariff Orders") until their termination on February 24, 2026, per Executive Order 14389. However, Plaintiff's entries continue to liquidate with IEEPA duties assessed.

25.    To implement the Challenged Tariff Orders, the Executive Office of the President directed changes to the HTSUS requiring that goods subject to the tariffs imposed by the above executive orders be entered under new tariff codes.

26.    The ITC publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. § 1202. In response to the implementation of the Challenged Tariff Orders, the ITC has repeatedly updated Chapter 99 of the HTSUS to conform with the actions of the Executive Office of the President. Importers, including Plaintiff, have been required to include such subheadings on entry declarations filed for imported merchandise subject to the IEEPA tariffs.

27.    Additional actions implementing the Challenged Tariff Orders have been undertaken by CBP, including the assessment of the IEEPA tariffs on entries of Plaintiff's merchandise and the liquidation thereof. CBP is charged with the assessment and collection of all duties, taxes, and fees required upon importation, including the IEEPA tariffs. *See* 19 U.S.C. §§ 1500, 1502. CBP additionally issues Federal Register notices and Cargo Systems Messaging Service notices regarding the applicability of the tariffs imposed by the Challenged Tariff Orders.

28.    USTR has additionally been tasked with the modification of the IEEPA tariffs based on negotiations with foreign nations. Thus far, USTR has published multiple Federal Register notices and announced deals with foreign nations impacting the applicability and rate of the IEEPA tariffs imposed on merchandise entering the United States, including Plaintiff's.

29.    Plaintiff has been adversely impacted or aggrieved by these actions pursuant to 5 U.S.C. § 702. Such agency actions are final as to Plaintiff upon the payment of IEEPA tariffs to CBP that cannot thereafter be recovered.

30.    On April 14, 2025, several companies filed an action in this Court challenging the legality of the Executive Office of the President's imposition of tariffs under the authority granted by IEEPA. This Court determined that the imposition of tariffs was not authorized by IEEPA in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), *aff'd in part, vacated in part, remanded sub nom. V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (en banc), *cert. granted*, 222 L. Ed. 2d 1231 (Sept. 9, 2025). The Supreme Court confirmed that IEEPA does not authorize the imposition of tariffs in *Learning Resources, Inc., et al. v. Trump, President of the United States, et al.* 607 U.S. ___ (2026).

31.    IEEPA grants certain powers to the President, including the ability to "regulate… importation… of… any property in which any foreign country or national thereof has any interest by any person… subject to the jurisdiction of the United States…" 50 U.S.C. § 1702(a)(1)(B).

32.    The authorities granted to the President under 50 U.S.C. § 1702 may be used to deal with an "unusual and extraordinary threat" with respect to which a national emergency has been declared. 50 U.S.C. § 1701.

33.     No provision of IEEPA makes any mention of tariffs, duties, or other revenue-raising measures.

34.     This Court found that, based on the language of the statute, IEEPA did not grant the President the authority to impose tariffs. Specifically, this Court found that the "President's assertion of tariff-making authority in the instant case, unbounded as it is by any limitation in duration or scope, exceeds any tariff authority delegated to the President under IEEPA." *V.O.S. Selections*, 772 F. Supp. 3d 1350, 1376.

35.     This Court's decision was appealed, but ultimately upheld in part by the U.S. Court of Appeals for the Federal Circuit in *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, 222 L. Ed. 2d 1231 (Sept. 9, 2025). The Federal Circuit again found the IEEPA tariffs to be beyond the authority granted to the President by IEEPA, finding that "Congress, in enacting IEEPA, did not give the President wide-ranging authority to impose tariffs" on a global scale. *Id.* at 1337.

36.     The Supreme Court held in *Learning Resources, Inc., et al. v. Trump,* 607 U.S. ___ (2026) that "IEEPA does not authorize the President to impose tariffs." The Court found that the language of IEEPA, specifically "regulate… importation," did not clearly grant the President the power to impose tariffs, stating that the "facial breadth of 'regulate' places in stark relief what the term is not usually thought to include: taxation." *Id.* Additionally, the Court stated that the President "must point to clear congressional authorization to justify his extraordinary assertion of the power to impose tariffs… [h]e cannot." *Id.* (internal quotation marks omitted).

37.     All of the Challenged Tariff Orders purport to impose tariffs and modify the HTSUS solely under IEEPA.

38.    As of the date of this complaint, CBP has continued to liquidate Plaintiff's entries with IEEPA duties assessed.

## COUNT I

39.    The preceding paragraphs of this Complaint are incorporated by reference as though fully restated herein.

40.    The imposition of the IEEPA tariffs through the Challenged Tariff Orders exceeds the statutory authority granted to the President by IEEPA.

41.    The Challenged Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

## COUNT II

42.    The preceding paragraphs of this Complaint are incorporated by reference as though fully restated herein.

43.    The revisions of the HTSUS implementing secondary classifications under Chapter 99 pursuant to the Challenged Tariff Orders were completed under unlawful executive orders.

44.    Such revisions are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

## COUNT III

45.    The preceding paragraphs of this Complaint are incorporated by reference as though fully restated herein.

46.    The requirement to classify merchandise in secondary classifications in Chapter 99, HTSUS, related to the Challenged Tariff Orders, was pursuant to unlawful executive orders.

47.    The requirement to include such secondary classifications is therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

## COUNT IV

48.    The preceding paragraphs of this Complaint are incorporated by reference as though fully restated herein.

49.    The further modification of the HTSUS through Federal Register notices published by USTR has been undertaken per unlawful executive orders.

50.    Such modifications are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court:

a) declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

b) declare that the revisions to the HTSUS by the ITC are void *ab initio* with respect to Plaintiff;

c) declare that the requirement to classify merchandise in Chapter 99 provisions was unlawful with respect to Plaintiff;

d) declare that the revisions to the HTSUS by USTR are void *ab initio*;

e) enjoin Defendants from continuing to liquidate Plaintiff's entries with IEEPA tariffs assessed;

f) order the United States to refund all IEEPA tariffs collected from Plaintiff as of the date of such order, with interest as provided by law, through liquidation or

reliquidation as necessary, or, in the alternative, order the United States to pay Plaintiff a money judgment equal to the value of such IEEPA tariffs, plus interest;

g) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

h) grant such further and additional relief as this Court deems proper.

Respectfully submitted,

/s/ Michael E. Murphy

Michael E. Murphy
John M. Foote
Aaron M. Applebaum
Flynn K. Madden
Gwendolyn Ellis-Joyce

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8016
ted.murphy@sidley.com

*Counsel for Plaintiff,*
*Detroit Thermal Systems, LLC*

Dated: May 7, 2026